# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **02 C 3886** | **DATE** | May 6, 2004 |
| **CASE TITLE** | AT. Andrew Janes v Bose Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☒ Status hearing set for 5/13/04, at 9:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ☒ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment of non-infringement is denied.

(11) ☒ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| X | Notices mailed by judge's staff. | MAY 7 - 2004 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |
| | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

**Document Number**

73

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAY 7 - 2004

T. ANDREW JANES,                )
                                )
                Plaintiff,       )
                                )    No.    02 C 3886
        v.                      )
                                )    Judge Robert W. Gettleman
BOSE CORPORATION,                )
                                )
                Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff T. Andrew Janes initiated the instant lawsuit against defendant Bose

Corporation, alleging that defendant's "3-2-1 Home Entertainment System" infringes plaintiff's

patent. Defendant has moved for summary judgment of non-infringement pursuant to Fed. R.

Civ. P. 56(c) . For the reasons stated herein, defendant's motion is denied.

## FACTS

Plaintiff is the named inventor of U.S. Patent No. 5,557,680 (the "'680 patent"), entitled,

"Loudspeaker System for Producing Multiple Sound Images Within a Listening Area from Dual

Source Locations."[1] Claim 1 of the '680 patent provides:

> 1. A loudspeaker system for producing, in a listening area, realistic sound images from
> an audio signal generator with a multiplicity of audio signal channels, the system
> comprising:
>
>> two spaced-apart sound cabinets for housing speaker drivers;
>>
>> a first speaker driver mounted in a first of the defined cabinets and
>> having an axis directed toward the listening area, the first driver
>> configured for being coupled to a first channel signal of said audio
>> signal generator and operable for receiving said first channel signal

---

[1]Figure 1 of the patent is attached as an exhibit to this opinion.

and creating a first channel sound image forward of the cabinet and into the listening area;

a second speaker driver mounted in a second of the cabinets and having an axis directed toward the listening area, the second driver configured for being coupled to a second channel signal of said audio signal generator and operable for receiving said second channel signal and creating a second channel sound image forward of the cabinet and into the listening area;

a third speaker driver mounted in said first cabinet and physically spaced from said first driver, the third driver having an axis oriented toward the listening area and at an angle to said first driver axis, the third driver configured for being coupled to a signal having frequency components of a third channel from said audio signal generator for receiving said signal and directing sound with third channel components into the listening area at an angle to the first channel sound image;

a fourth speaker driver mounted in said second cabinet and spaced from said second driver, the fourth driver having an axis oriented toward the listening area and at an angle to said second driver axis, the fourth driver configured for being coupled to a signal having components of a third channel for receiving said signal and directing sound with third channel components into the listening area at an angle to the second channel sound image;

when the first and second cabinets are adjacent to one another with the axis of the first and second devices facing forward to the listening area and the axes of the third and fourth drivers directed inwardly to a location in the listening area between the first and second cabinets, the third and fourth drivers being operable for creating, in the listening area location between the first and second channel sound images, a focused sound image having components of a third channel to provide a listener in the listening area with at least three sound images generated from two sound cabinet locations to create a more realistic sound presentation for the listener.

Claim 9 provides:

9.  An acoustic system for producing, in a listening area, realistic sound images from multiple channels, the system comprising:

> an audio signal generator operable for generating at least first, second and third channel signals;

> two spaced-apart sound cabinets for housing speaker drivers;

> a first speaker driver mounted in a first of the cabinets and having an axis directed toward the listening area, the first driver electrically coupled to said audio signal generator for receiving said first channel signal, the first driver operable for creating a first channel sound image forward of the cabinet into the listening area;

> a second speaker driver mounted in a second of the cabinets and having an axis directed toward the listening area, the second driver electrically coupled to said audio signal generator for receiving said second channel signal, the second driver operable for creating a second channel sound image forward of the cabinet into the listening area;

> a third speaker driver mounted in said first cabinet and physically spaced from said first driver, the third driver having an axis oriented toward the listening area and at an angle to said first driver axis, the third driver electrically coupled to said audio signal generator for receiving a signal having components of a third channel, the third driver operable for directing sound with third channel components into the listening area at an angle to the first channel sound image;

> a fourth speaker driver mounted in said second cabinet and spaced from said second driver, the fourth driver having an axis oriented toward the listening area and at an angle to said second driver axis, the fourth driver electrically coupled to said audio signal generator for receiving a signal having components of a third channel, the fourth driver operable for directing sound with third channel components at an angle to the second channel sound image;

> when the first and second cabinets are adjacent to one another with the axis of the first and second drivers facing the listening area and

3

the axes of the third and fourth drivers directed inwardly to a location in the listening area between the first and second cabinets, the third and fourth drivers being operable for creating, in the listening area location between the first and second channel sound images, a focused sound image having components of a third channel to provide a listener in the listening area with at least three sound images generated from two sound cabinet locations to create a more realistic sound presentation for the listener.

Claim 15 reads:

15. A method for producing realistic sound images from an audio signal generator with a multiplicity of audio signal channels, the method comprising:

positioning a first speaker driver to be oriented generally toward a predetermined area;

coupling the first driver to a first channel signal of said audio signal generator, the first driver operable for receiving said first channel signal and creating a first channel sound image in the area forward of the first driver;

positioning a second speaker driver at a location spaced from the first speaker driver to also be oriented generally toward said predetermined area;

coupling the second driver to a second channel signal of said audio signal generator, the second driver operable for receiving said second channel signal and creating a second channel sound image in the area forward of the second driver;

positioning a third speaker driver proximate to said first driver and oriented generally toward the area at an angle to said first driver;

coupling the third driver to a signal having components of a third channel from said audio signal generator, the third driver operable for receiving said signal and creating sound with third channel components in the area at an angle to the first channel sound image;

positioning a fourth speaker driver proximate to said second driver and oriented generally toward the area at an angle to said second driver;

4

coupling the fourth driver to a signal also having components of said third channel from said audio signal generator, the fourth driver operable for receiving said signal and creating sound with third channel components at an angle to the second channel sound image;

placing the drivers adjacent to one another with the first and second drivers generally oriented to produce adjacent sound images in the area and the third and fourth drivers directed inwardly of the direction of the first and second drivers such that the third and fourth drivers collectively present a focused sound image having components of said third channel in the area and between the first and second channel sound images to provide a listener with at least three sound images generated from generally two locations whereby a more realistic sound presentation is created for the listener.

Claim 23 recites:

23. A loudspeaker system for producing realistic sound images from an audio signal generator with a multiplicity of audio signal channels, the system comprising:

a first speaker driver mounted in a sound cabinet, the first driver configured for being coupled to a first channel signal of said audio signal generator and operable for receiving said first channel signal and creating a first channel sound image, the first speaker driver directing said first channel sound image into an area forward of the driver;

a second speaker driver mounted in a second sound cabinet, the second driver configured for being coupled to a second channel signal of said audio signal generator and operable for receiving said second channel signal and creating a second channel sound image, the second speaker driver directing said second channel sound image into an area forward of the driver;

a third speaker driver mounted in said first cabinet and physically spaced from said first driver, the third driver being oriented at an angle to said first driver and configured for being coupled to a signal having components of a third channel from said audio signal generator, the third driver operable for receiving said signal and directing sound with third channel components forward of the driver at an angle to the first channel sound image;

a fourth speaker driver mounted in said second cabinet and physically spaced from said second driver, the fourth driver being oriented at an angle to said second driver, and configured for being coupled to a signal also having components of a third channel from said audio signal generator, the fourth driver operable for receiving said signal and directing sound with third channel components forward of the driver at an angle to the second channel sound image;

when the first and second cabinets are adjacent to one another with the first and second drivers generally oriented to produce first and second channel sound images generally adjacent to one another, the third and fourth drivers being directed at an angle inwardly of the direction of the first and second drivers and being operable for collectively creating, between the first and second channel sound images, a focused sound image having components of said third channel to provide a listener with at least three channel sound images generated from two sound cabinet locations to create a more realistic sound presentation for the listener.

In 2001, defendant introduced the 3-2-1 Home Entertainment System, which plaintiff maintains infringes the '680 patent. Defendant has moved for summary judgment of non-infringement, arguing that, under defendant's proposed claim construction, the 3-2-1 Home Entertainment System does not infringe the '680 patent.[2] After reviewing the parties' written

---

[2]Defendant's briefs also argue that, under plaintiff's proposed claim construction, certain claims in the '680 patent are overly broad and thus invalid in light of the Sony SA-VA system, which is prior art. At oral argument on February 18, 2004, however, defense counsel explained that "[I]nsofar as our motions for summary judgment are concerned, we are focused primarily on the non-infringement arguments that we made. And we've only point this [the invalidity argument] up as showing how they're [the plaintiff] back and forth in litigation positions on, well, this would infringe but that's not prior art.... I think we have a defense of invalidity and affirmative defense. But what we focused on for the motions really were the two non-infringement defenses. This [the invalidity argument] was just to show you how they go one way on claim language if they think it's an infringement and they go the other way if they think it's prior art that affects them." With this caveat in mind, the court declines to address defendant's invalidity arguments, which are merely tangential to the summary judgment motion.

submissions and hearing oral argument on the instant motion, the court denies defendant's motion for the reasons set forth below.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## DISCUSSION

A patent infringement analysis involves two steps. First, the court determines the scope of the claims is determined as a matter of law. Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002). Second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at

least one claim are present, either literally or by a substantial equivalent, in the accused device. Id.

A.     Claim Construction

In the absence of an express intent to impart a novel meaning to claim terms, the words used in a claim are deemed to have their ordinary and customary meaning as understood by one of ordinary skill in the art. Id. at 1325; Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1306 (Fed. Cir. 2003) (citing Toro Co. v. White Consol. Indus., 199 F.3d 1295, 1299 (Fed. Cir. 1999)). In ascertaining the ordinary meaning of words, the court may consult a variety of sources, including the claims themselves, intrinsic evidence such as the written description and prosecution history, and dictionaries and treatises. Teleflex, 299 F.3d at 1325 (citations omitted).

The presumption in favor of ordinary meaning may be overcome, however, where the patentee chooses to be his or her own lexicographer by clearly setting forth a definition for a claim term in the specification. Anchor Wall Systems, Inc., 340 F.3d at 1306 (citation omitted). A patentee may also demonstrate an intent to deviate from the ordinary meaning by including in the specification "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." Teleflex, 299 F.3d at 1325. Similarly, if the ordinary and customary meaning of the words in the claims lacks sufficient clarity to permit the scope of the claim to be ascertained from the words alone, the specification may be useful in resolving such ambiguity. Id.

The Federal Circuit has recognized that there may be "a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification."

8

Anchor Wall Systems, Inc., 340 F.3d at 1307 (quoting Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998)). With these standards in mind, the court turns to the claim language at issue in the instant dispute.

1.      Claims 1 and 9: construing "toward"

Claims 1 and 9 speak of a first and second speaker driver, each of which is mounted in a sound cabinet and has an axis "directed toward the listening area" (emphasis added). Defendant urges the court to construe "toward" as "generally perpendicular to the front plane collectively defined by the sound cabinets to project sound into the listening area." Plaintiff maintains that "toward" should be interpreted as "in the direction of," which is the definition found in Merriam Webster's Collegiate Dictionary (10th ed. 1993).

According to the "Background of the Invention," traditional stereo recording involved two channel signals, a left and a right, each of which had its own speaker driver housed in its own speaker cabinet. In a two-channel system, if the left and right speaker drivers are pointed inward, toward the listener, their sound presentations will merge together and reinforce the center image, but degrade the spaciousness of the presentation. If the speaker drivers are pointed forward or slightly outward, greater spaciousness is achieved at the expense of degrading the center image.

Some efforts at enhancing reproduction of two channel systems have utilized "reflected sound" that is "bounced" off the back and side walls. The "Background of the Invention" notes, however, that "adding additional artificial reflected sound into the room beyond that reflected sound which already exists in the original musical recording, injects a certain artificiality to the replayed music and creates a loss of direction of the course and loss of musical sound integrity."

9

Ultimately, three-channel systems comprised of a left channel signal, right channel signal, and center channel signal were developed. A challenge of those systems, however, was positioning a separate speaker driver for the center channel. The "Background of the Invention" identifies two drawbacks in particular with respect to the third speaker driver: (1) the spatial and aesthetic considerations of placing a third speaker cabinet within a room, and (2) managing the dominance of the center channel, which often carries more information than the left and right channels.

The stated objectives of the '680 patent are, among other things, to, (1) eliminate the necessity of positioning an additional speaker driver and cabinet separate from the left and right speaker drivers, and (2) maintain the integrity of the center channel signal and the sound image produced therefrom within the listening area while eliminating the distinct perceived location of a center channel speaker driver. To this end, the "Summary of the Invention" provides:

> The present invention addresses the above-discussed objectives with a loudspeaker system which utilizes a unique configuration of speaker drivers which are coupled to a multiplicity of audio signal channels of an audio signal generator to more realistically recreate a musical recording in a listening area similar to the sound of the music on stage.

> To that end, a loudspeaker system comprises two spaced apart cabinets for housing speaker drivers.... The sound cabinets are positioned to collectively define a front plane which generally faces the listening area. A first speaker driver is mounted in one of the cabinets while a second speaker driver is mounted in the other of the cabinets. The first and second speaker drivers are arranged to have their axes generally perpendicular to the defined front plane of the sound cabinets to project sound into the listening area....

> The system further comprises third and fourth speaker drivers which are positioned respectively within the first and second cabinets next to but slightly spaced from the first and second drivers in those cabinets....

10

The axes of the third and fourth drivers are oriented at an angle with respect to the plane defined by the sound cabinets and with respect to the axes of the first and second drivers to which they are adjacent. The third and fourth speaker drivers cooperate to create a third channel sound image, such as a center channel sound image with center channel frequency components in the listening area forward of the sound cabinets. Preferably, the center channel sound image is created generally between the right and left channel sound images in the listening area. To that end, the axes of the third and fourth speaker drivers are angled with respect to the generally parallel axes of the first and second speaker drivers at an angle in a range of approximately 20°–45° are directed forward into the listening area and inwardly between the parallel axes of the first and second speaker drivers such that the axes of the third and fourth speaker drivers intersect forward of the sound cabinets in the listening area.

The focused third channel drivers create a center channel sound image while eliminating the need for a separate dedicated sound cabinet with speaker drivers for playing the center channel.... The loudspeaker system creates an accurate and well balanced sound image with direct sound from each channel as opposed to various artificial sound images utilizing the addition and subtraction of the left and right channels and artificially created reflected sound.

The "Detailed Description of Specific Embodiments" further provides:

[T]he sound perceived by [the] listener 16 is created by primarily direct sound images which recreate the sound, such as music, as it was recorded as opposed to a system which attempts to create sound environments by utilizing artificially reflected and/or electronically modified signals, e.g., L-R, R-L techniques.

According to defendant, the language describing the axes of the outer drivers (the first and second drivers) as being "generally perpendicular" to the front plane of their respective sound cabinets and "generally parallel" to one another, as well as the discussion of using direct (as opposed to reflected) sound, compels the court to adopt defendant's proposed construction of "toward," as perpendicular. The court disagrees.

In the instant case, the disputed claim language in claims 1 and 9 describes a speaker driver mounted in a cabinet and having an axis directed "toward" the listening area. As noted above, in the absence of an express intent to impart a novel meaning to claim terms, or some

11

ambiguity of claim terms requiring clarification, the words used in a claim are deemed to have their ordinary and customary meaning as understood by one of ordinary skill in the art. Here, there is nothing in the specification of the '680 patent indicating that "toward" is intended to convey anything other than its ordinary and customary meaning: "in the direction of."

Two of the stated objectives of the '680 patent are to, (1) create a center channel image while eliminating the necessity of positioning an additional speaker driver and cabinet separate from the left and right speaker cabinets, and (2) eliminate the distinct perceived location of a center channel speaker driver. Consistent with these objectives, the "Field of the Invention" states that "[t]he present invention relates generally to a loudspeaker system for creating multiple sound images and more particularly to a loudspeaker system which produces multiple sound images in a listening area with a focused center source image from two speaker driver locations."

The '680 patent claims a system comprising two speaker cabinets, each of which has two drivers inside. When the cabinets are adjacent to one another, one of the drivers in each cabinet has an axis directed forward to the listening area, and the other driver in each cabinet is "directed inwardly to a location in the listening area" between the two cabinets. The inwardly facing drivers create a third (center) channel image between the sound images created by the other (outer) two drivers.

Although it seems clear from the claim language that the inwardly-facing drivers are angled so that they create a channel image between the sound images created by the other (outer) two drivers, nothing in claims 1 and 9 implies that the axes of the outer drivers be, as defendant argues, "generally perpendicular to the front plane collectively defined by the sound cabinets to project sound into the listening area." Claims 1 and 9 simply use the word "toward" to describe

the orientation of the outer drivers in relation to the listening area and, in this context, it does not appear that "toward" needs further clarification.

Moreover, as discussed below, nothing in the specification compels such a narrow construction of "toward." Plaintiff has not assumed the role of lexicographer by explicitly defining "toward" to mean something other than its customary and ordinary definition. Nor has plaintiff used words of "manifest exclusion or restriction" that represent a clear disavowal of claim scope.

The language in the specification – specifically, the "Summary of the Invention" and "Detailed Description of Specific Embodiments" – that speaks of generally perpendicular axes and parallel axes does not represent an explicit definition that departs from the ordinary and customary meaning of "toward." The references to "generally perpendicular" and "parallel" in the context of the orientation of the outer speaker drivers are few and far between: "generally perpendicular" is used three times[3] in the specification, and "parallel" and "generally parallel" are each used once. Compare Microsoft Corp. v. Multi-Tech Systems, Inc., 357 F.3d 1340, 1348 (Fed. Cir 2004) (concluding that communications between the local and remote sites of a the claimed invention had to occur directly over a telephone line in light of, among other things,

---

[3]One of these instances, contained within the "Detailed Description of Specific Embodiments," provides: "<u>Preferably</u>, the front face surfaces 26 of the sound cabinets 18, 20 are generally planar and exist in a plane parallel to the front face of the speaker drivers 22, 24 and generally perpendicular to the respective axes 23, 25. The speaker drivers 22, 24 and their respective axes, 23, 25, define an imaginary sound plane 28 forward of the sound cabinets 18, 20 and generally facing the listening area. The defined plane 28 is an imaginary reference and will be utilized to define the position and orientation of the various speaker drivers and their axes in accordance with the principles of the present invention." (Emphasis added.)

specification's "roughly two dozen" references to data transmission "over or through a telephone line").

Defendant directs the court's attention to SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337 (Fed. Cir. 2001), for the proposition that characterizing a particular configuration as part of the "present invention," as in the instant case, is "strong evidence" that limits the scope of a patent's claims. SciMed is distinguishable in several important respects from the instant case, however.

Sci-Med involved three patents for balloon dilation catheters. At issue was whether the common specification of the three patents limited the scope of the asserted claims to catheters using one configuration of passageways, or lumens, as opposed to another. The SciMed court described the twelve references to "annular inflation lumen" included within the specifications' characterization of the "present invention" as "strong evidence that the claims should not be read to encompass the opposite structure." Id. at 1343. Moreover, the SciMed court was also influenced by language in another area of the specifications that characterized the annular inflation lumen as the "basic sleeve structure for all embodiments of the present invention contemplated and disclosed herein." Id. Last, the SciMed court emphasized that the three patents at issue "distinguish[ed] the prior art on the basis of the use of dual lumens and point[ed] out the advantages of the coaxial lumens used in the catheters that [were] the subjects of the SciMed patents." Id.

To begin, SciMed, in contrast to the instant case, involved only two conceivable choices: coaxial lumens (which used an annular inflation lumen) and dual lumens (which did not use an annular inflation lumen). Further, in contrast to the patents at issue in SciMed, the '680 patent

14

does not describe "generally perpendicular" axes as the basic configuration for "all embodiments of the present invention contemplated and disclosed herein." See id. Nor does the '680 patent distinguish or criticize prior art on the basis of the outer speaker driver configuration.

The instant case involves only a handful of references to "generally perpendicular," "generally parallel," and "parallel" (in the context of the configuration of the axes of the outer drivers).[4] These few references simply do not constitute an "explicit definition" that would warrant departing from the customary and ordinary meaning of "toward."

Alloc, Inc. v. International Trade Commission, 342 F.3d 1361 (Fed. Cir. 2003), relied on by defendant, is similarly distinguishable. In concluding that the patentee in that case invoked the added limitation "play," the Alloc court noted that the specification criticized prior art floor systems without play, id. at 1369, and that the patentee invoked play to overcome the prior art during prosecution of its parent patent, id. at 1372. According to the court, "Because the applicant invoked play to overcome the prior art..., Alloc cannot now contend that the '621 patent claims a flooring system and method for installing that system without play." Id. In the instant case, there is simply no comparable evidence from the prosecution history that plaintiff expressly disavowed outer speaker driver configurations that did not involve "generally perpendicular" axes.

_____

[4]It is worth noting that, with the exception of the example described in footnote 3, none of the references to "parallel," "generally parallel," and "generally perpendicular," is even in the same paragraph as the phrase "in the present invention." Compare Watts v. XL Systems, Inc, 232 F.3d 877, 883 (Fed. Cir. 2000) ("[T]he specification actually limits the invention to structures that utilize misaligned taper angles, stating that '[t]he present invention utilizes [the varying taper angle] feature.'").

The specification's criticism of reflected sound and references to "primarily direct sound" do not compel a contrary result. First, depending on the placement of the speakers and the dimensions of the room, the axes of the drivers at issue could be angled outward without creating reflected sound. For example, if the drivers were angled outward to some degree and not placed too close to the side walls, the sound images emanating therefrom could reach the listening area before bouncing off of the side or back walls. This would result in the delivery of "primarily direct sound" and would further minimize artificially created reflected sound.

Second, to the extent that the "Background of the Invention" criticizes reflected sound, it should be noted that such criticisms are discussed in the context of two-channel stereo systems, as opposed to the three-channel system contemplated by the '680 patent. Thus, when read in context, the specification's criticisms of reflected sound and its references to "primarily direct sound" do not constitute a disavowal of claim scope.

The court recognizes that all of the figures contained within the specification show outer drivers facing forward, with their axes perpendicular to the front of the speaker cabinets. However, as the Federal Circuit has noted, "[Federal Circuit] case law makes clear that a patentee need not describe in the specification every conceivable and possible future embodiment of his invention." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (internal quotation omitted). See also Teleflex, 299 F.3d at 1328 ("[The Federal Circuit has] cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.") (Quotations omitted.).

In the absence of any indication that plaintiff intended to depart from the ordinary and customary meaning of the word "toward" in claims 1 and 9, the court declines to adopt

defendant's proposed claim construction. Rather, the court concludes that "toward," as used in claims 1 and 9, should be construed according to its dictionary definition, which is "in the direction of." Consistent with this conclusion, the court also declines to read analogous limitations into claims 15 and 23, which require "adjacent" sound images from the outer drivers.

Having reached that conclusion, the court notes that it questions whether the distinction between its construction and defendant's construction is merely academic. Even under defendant's construction, the drivers are oriented "to project sound into the listening area." To the extent that defendant's construction calls for "generally perpendicular" axes to achieve that end, the court notes that "generally perpendicular" is not as precise as "perpendicular." Accordingly, even under defendant's proposed construction, the question of infringement would necessarily be left to a jury.

2.      Claims 1, 9, 15, and 23: construing "first channel signal" and "second channel signal"

In independent claims 1, 9, 15, and 23, a first speaker driver receives a "first channel signal" and a second speaker driver receives a "second channel signal." Defendant argues that the first and second channel requirement should be construed as a "distinct left or right channel that is recorded or processed without electronically modifying it, such as by using sound cancellation techniques." Plaintiff, in contrast, maintains that the first and second channel signal requirement should be construed as channel signals including a band of frequencies for generating outer auditory images (i.e., auditory images left or right of center).

In support of its construction, defendant directs the court's attention to language in the "Background of the Invention" that criticizes McShane, U.S. Pat. No. 5,117,459, which discloses a two-channel (stereo) system that used a particular sound cancellation technique. As plaintiff

17

points out, however, that discussion was limited to a two-channel stereo system, whereas the

'680 patent contemplates a system involving three or more channels. Moreover, his criticism

was limited to cross-cancellation techniques in particular, not electronic modification more

generally.

Defendant's more persuasive evidence in favor of restricting claims 1, 9, 15 and 23 is

found in the following language in the "Detailed Description of Specific Embodiments":

> Furthermore, the sound perceived by listener 16 is created by primarily direct
> sound images which recreate the sound, such as music, as it was recorded as
> opposed to a system which attempts to create sound environments by utilizing
> artificially reflected and/or electronically modified signals, e.g., L-R, R-L
> techniques.

As plaintiff explained in oral argument, however, reading in a limitation that disclaims all

sound modification would lead to absurd results. Under defendant's construction, plaintiff's

invention could be used only with amplifiers that do not contain volume, bass, treble, or balance

controls. The court is not inclined to construe claims 1, 9, 15, and 23 in a way that has such

implausible ramifications.

Even if the court concluded otherwise, the above-quoted statement alone is insufficient to

establish an intent to disclaim all electronic modification, especially in light of the specification's

focused criticism on L-R, R-L techniques, which are directed to sound cancellation in particular.

The "Summary of the Invention," for example, provides that "the loudspeaker system creates an

accurate and well balanced sound image with direct sound from each channel as opposed to

various artificial sound images utilizing the addition and subtraction of the left and right

channels...." With this context in mind, the court is not persuaded that the patentee used

18

expressions of manifest exclusion or restriction that would justify reading claims 1, 9, 15, and 23 as disclaiming all electronic modification.

Nor is the court willing to read claims 1, 9, 15, and 23 as requiring "distinct" left and right channels. Defendant points to only one reference to "distinct" channels within the entire specification, contained within the "Detailed Description of Specific Embodiments." Viewed in context, however, it is apparent that the "distinct" left and right channels are referring to one of the patentee's preferred embodiments:

> When playing music recorded with multiple channels, the generator preferably recreates multiple audio channels signals and more preferably recreates three audio signals or three channels. Specifically, generator 12 recreates a left channel signal 30, a right channel signal 32 and a center channel signal 34. The center channel generator alternatively may produce two center signals, such as a left center signal and a right center signal, which are coupled, respectively, to speaker drivers 40 and 42 through appropriate and respective lines 40a and 42a. Each of the left, right and center channel signals are all distinct and contain unique frequency components which are defined when the music is recorded. [Emphasis added.]

This reference alone is inadequate to overcome the "heavy presumption" that "channel signal" as used in claims 1, 9, 15, and 23 carries its ordinary and customary meaning. Defendant has not identified any other reference in the specification to "distinct" channels, much less any mention of "distinct" channels that distinguishes the '680 patent from prior art. Moreover, as noted earlier, "[the Federal Circuit has] cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification." Teleflex, 299 F.3d at 1328.

For these reasons, the court declines to adopt defendant's proposed claim construction of "channel signal" as used in claims 1, 9, 15, and 23, and instead adopts plaintiff's construction,

which requires the first and second channel signals to include a band of frequencies for generating outer auditory images (i.e., auditory images left or right of center).

B.    Comparison between claims and the 3-2-1 Home Entertainment System

The court need not consider defendant's arguments regarding the comparison of its device to the '680 patent, which depended entirely on defendant's proposed claim construction. Accordingly, defendant's motion for summary judgment of non-infringement is denied.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment of non-infringement is denied. The parties are directed to appear for a report on status on May 13, 2004, at 9:00 a.m.

**ENTER:**    **May 6, 2004**

Robert W. Gettleman
United States District Judge



**FIG. I**